IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01044-PAB

BOKF, N.A.,

    Plaintiff,

v.

KELLY CONDON and
SUNFLOWER BANK, N.A.,

    Defendants.

---

**TEMPORARY RESTRAINING ORDER**

---

This matter is before the Court on that portion of Plaintiff BOKF, N.A.'s Rule 65 Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 5] that seeks a temporary restraining order against defendants Kelly Condon and Sunflower Bank, N.A. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367. On April 16, 2019, the Court held a hearing on plaintiff's motion. Docket No. 22. At the hearing, the Court made findings of fact that are incorporated herein by reference.

Plaintiff BOKF, N.A., is a national banking association. Docket No. 1 at 3, ¶ 6. Defendant Kelly Condon is a former employee of plaintiff and a current employee of defendant Sunflower Bank, N.A. ("Sunflower"). *Id.*, ¶ 7. Mr. Condon worked as a business development executive for plaintiff and its predecessor, CoBiz Financial, for a period of approximately ten years. Docket No. 1 at 4, ¶ 13. As a result, Mr. Condon acquired a substantial amount of knowledge regarding plaintiff's business and financial

products.

While employed by plaintiff, Mr. Condon acknowledged receipt of the company's "Standards of Conduct." *See* Plaintiff's Exhibits 1-2; Docket Nos. 1-1, 1-2.[1] Those standards included information about the use of confidential and proprietary information. For example, Section 7.1.2 provides that "[c]onfidential, proprietary, or privileged information regarding customers, consumers, suppliers, and employees is used solely for BOKF purposes" and "shall not be communicated to any person outside of BOKF." Plaintiff's Exhibit 1 at 7; Docket No. 1-1 at 8.

Plaintiff also had an "Employee Non-Disclosure and Confidentiality Agreement." *See* Plaintiff's Exhibit 3 at 7; Docket No. 1-3 at 8. Pursuant to paragraph 1 of that agreement, an employee of plaintiff "agrees and acknowledges"

> [t]hat during the course of my employment with BOKF, there may be disclosed to me certain trade secrets, confidential and/or proprietary business information of or regarding BOKF; consisting but not necessarily limited to . . . [b]usiness information: business and development plans, investor and customer lists, pricing data, financial data, marketing data, production data, operational plans and investor transactions.

Plaintiff's Exhibit 3 at 7; Docket No. 1-3 at 8. In paragraph 3, the employee "agrees that, except in promoting BOKF business, and as necessary in performing the duties of his/her employment with BOKF, Employee shall not use in any manner, directly or indirectly, any Confidential Information." Plaintiff's Exhibit 3 at 7; Docket No. 1-3 at 8. Finally, paragraph 4 contains a list of actions an employee agrees to take upon termination from his or her employment with plaintiff. One such action is the "return to

---

[1] The Court refers to exhibits referenced at the April 16, 2019 hearing, which were also attached to plaintiff's complaint, Docket No. 1.

BOKF" of

> all documents and property of BOKF, even if not marked "confidential" or "proprietary," including but not necessarily limited to: presentations, reports, manuals, correspondence, software, contacts and/or contact lists and/or compilations of contact information, holiday card lists, birthday lists, business cards, and/or personal cards, rolodexes, and/or notes (whether in hard copy or in electronic copy and maintained in sources such as email, mobile phone(s), tablets, personal computers, thumb drives, and/or social media accounts) and all other materials and all copies thereof relating in any way to BOKF business, or in any way obtained by [the employee] during the course of employment.

Plaintiff's Exhibit 3 at 7-8; Docket No. 1-3 at 8-9. The agreement provides that the employee agrees to "not retain copies or notes of the foregoing." Plaintiff's Exhibit 3 at 8; Docket No. 1-3 at 9.

On March 20, 2019, Mr. Condon notified plaintiff that he had accepted a position at Sunflower and was giving his "two weeks' notice (through April 4, 2019)." Plaintiff's Exhibit 5; Docket No. 1-5. At the hearing, the Court found that plaintiff continued to pay Mr. Condon through April 4, 2019. The Court further found that, on the same day Mr. Condon submitted his resignation letter, March 20, 2019, he used his personal Hotmail email address to send emails to various individuals, including customers and referral sources of plaintiff. *See* Plaintiff's Exhibit 6; Docket No. 1-6.[2] In one such email, Mr. Condon stated that he had taken a position at Sunflower Bank and that, "after [he was] plugged in [he would] reach out to discuss how we can work together." Plaintiff's Exhibit 6 at 2; Docket No. 1-6 at 3. Mr. Condon indicated, in his offer of proof at the

---

[2]At the hearing, counsel for Mr. Condon defined the term "referral source" as someone with whom Mr. Condon networks. He indicated that a referral source could be "someone out in the community who [Mr. Condon] has a relationship with" who has referred clients to BOKF.

3

hearing, that this email was inadvertently sent to three customers.

Mr. Condon sent the March 20, 2019 emails from his personal phone, which, he indicated, was used for both business and personal purposes with BOKF's knowledge and approval. According to Mr. Condon, customer contact information would automatically populate each time he sent a business email from his phone. BOKF paid him a monthly stipend for his phone.

At the hearing, Mr. Condon's attorney indicated that Mr. Condon had retained two categories of information arguably belonging to BOKF following his resignation: (1) the email addresses that automatically populated when he sent a business email on his phone; and (2) business cards for BOKF's customers and referral sources. Mr. Condon's retention of business cards is also evidenced by his email exchange with BOKF national counsel Erica Dorwart on March 21, 2019 in which she offers to "arrange" for him to "return BOKF/CoBiz data on business cards to BOKF/CoBiz by courier with tracking." Plaintiff's Exhibit 7 at 1; Docket No. 1-7 at 2.

According to Sunflower's offer of proof, Sunflower was not aware that Mr. Condon had retained certain information belonging to plaintiff until Sunflower conducted an investigation after the filing of this lawsuit. Sunflower indicated that Laura Frasier, Sunflower's Chief Human Resources Officer, specifically instructed Mr. Condon on March 19, 2019 to comply with all of BOKF's agreements, policies, and procedures. At the hearing, the Court found no evidence that Sunflower had reviewed the information contained on Mr. Condon's Hotmail account or phone.

Plaintiff filed this lawsuit on April 9, 2019 asserting the following claims against Mr. Condon and Sunflower: (1) misappropriation of trade secrets in violation of the

4

Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-64-102 *et seq.*, and the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) civil theft under Colorado law; and (3) civil conspiracy under Colorado law. Docket No. 1 at 12-18. Plaintiff also asserted claims for breach of contract and breach of fiduciary duty against Mr. Condon, as well as a claim against Sunflower for aiding and abetting Mr. Condon's breach of fiduciary duty. *Id.* at 10-12, 18-19. On April 9, 2019, plaintiff moved for a temporary restraining order and preliminary injunction against both defendants on its breach of fiduciary duty and misappropriation of trade secrets claims. Docket No. 5. Plaintiff seeks to enjoin defendants from: (1) "possessing, using, disclosing, disseminating, distributing, or copying BOKF'S trade secrets and confidential information"; and (2) "soliciting any current client of BOKF's through the use of confidential information belonging to BOKF." Docket No. 5-1 at 1-2. Plaintiff also requests that the Court order defendants to: (1) "return to BOKF and destroy BOKF's trade secrets and confidential information"; (2) permit expedited discovery including, at defendants' expense, "forensic inspection of Defendants' computer systems, email accounts, storage devices or media to identify additional BOKF's trade secrets and confidential information"; and (3) "preserve . . . all documents and information in Defendants' possession, custody, or control . . . related to the issues set forth in BOKF's Verified Complaint." *Id.* at 2.

     To succeed on a motion for temporary restraining order, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling*

5

*Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)). Because injunctive relief before trial is "an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted). Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989), "is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

At the hearing, the Court found that plaintiff had not demonstrated a likelihood of success on the merits of its state and federal trade secrets claims. Specifically, the Court determined that plaintiff had failed to take reasonable measures to limit access to the customer and referral source contact information on Mr. Condon's telephone or to have departing employees delete such information from personal telephones that plaintiff authorized such employees to use for work purposes.[3]

The Court also concluded that plaintiff had not shown a likelihood of success on the merits of its claim for aiding and abetting breach of fiduciary duty against Sunflower. To prevail on this claim, plaintiff is required to show (1) breach of a fiduciary duty owed

---

[3] As stated at the hearing, the Court finds no basis on which to enjoin Mr. Condon from using information that he has incorporated into his mental knowledge base. *See* Docket No. 5 at 10 (arguing that "information Condon has in his head about these customers' needs and the prior financing and terms of deals they received from BOKF is also a trade secret"). In any event, Mr. Condon agreed that he would not use any client contact or deal information before the preliminary injunction hearing.

to plaintiff, (2) defendant's knowing participation in the breach, and (3) damages. *Holmes v. Young*, 885 P.2d 305, 308-09 (Colo. App. 1994). As discussed above, however, plaintiff has not established that Sunflower knew of or cooperated in a breach of fiduciary duty by Mr. Condon. In fact, the Court determined at the hearing that the evidence indicated just the opposite, as Ms. Frasier instructed Mr. Condon to abide by his employment agreements with plaintiff. Plaintiff's evidence that Mr. Condon facilitated a meeting between Sunflower and a BOKF client at some point before March 29, 2019 does not undermine this conclusion. Plaintiff's information regarding the alleged client meeting was not fully developed or explained at the hearing. More importantly, it does not, standing alone, establish Sunflower's knowing participation in any breach of fiduciary duty. Accordingly, plaintiff is not entitled to a TRO against Sunflower.[4]

The Court reaches a different conclusion with respect to plaintiff's breach of fiduciary duty claim against Mr. Condon. Under Colorado law, an employee owes a duty of loyalty to his employer, which includes the "duty not to compete with [the employer] concerning the subject matter of [the employee's] agency." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 492-93 (Colo. 1989) (internal quotation marks omitted). "[W]hether an employee's actions constitute a breach of his duty of loyalty involves a question of fact to be determined by the trial court in the first instance based on a consideration of all the circumstances of the case." *Id.* at 494. The focus of the

---

[4]For the same reasons – namely, plaintiff's failure to show that Sunflower participated in Mr. Condon's breach of fiduciary duty – the Court declines to expand the scope of the restraining order to include Sunflower as a party "in active concert or participation" with Mr. Condon. Fed. R. Civ. P. 65(d)(2)(C).

Court's inquiry "is on whether [the employee] acted *solely* for [the employer's] benefit in all matters connected with his employment, and whether [the employee] competed with [his employer] during his employment, giving due regard to [the employee's] right to make preparations to compete." *Id.* at 498 (internal citation omitted).

The Court found at the hearing that Mr. Condon was not acting for plaintiff's benefit when he used plaintiff's customer and referral source contact information in his personal email account to send emails to plaintiff's customers and referral sources about his resignation. Based on this finding, as well as Mr. Condon's retention of business cards in contravention of plaintiff's nondisclosure and confidentiality agreement, Plaintiff's Exhibit 3 at 7; Docket No. 1-3 at 8, the Court determined that plaintiff was likely to succeed on its claim that Mr. Condon breached his duty of loyalty.

The Court also found that the remaining factors favored the issuance of a temporary restraining order. The Court noted that the public interest supports the enforcement of fiduciary duties, such as the duty of loyalty. *See Atlas Biologicals, Inc. v. Kutrubes*, No. 15-cv-00355-CMA-MEH, 2015 WL 996368, at *5 (D. Colo. Mar. 3, 2015) (finding that the public interest "tip[ped] in favor of . . . enforcing Plaintiff's fiduciary duties"). And Mr. Condon has not shown that he is likely to suffer any harm, let alone legitimate harm, as the result of a temporary restraining order. *See Taxsalelists.com, LLC v. Rainer*, No. 09-cv-02898-REB-KMT, 2009 WL 4884273, at *3 (D. Colo. Dec. 11, 2009) (finding that the balance of equities tipped in the plaintiff's favor where the defendants would "suffer no harm that [was] recognized in law if they [were] prohibited from . . . using information to which they [had] no legal right"). By

8

comparison, plaintiff has demonstrated that Mr. Condon's retention and use of customer and referral source contact information is likely to result in irreparable harm to plaintiff's good will and competitive position. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004) (discussing factors that support an irreparable harm determination, including "inability to calculate damages, harm to goodwill, diminishment of competitive positions in marketplace, loss of employees' unique services, the impact of state law, and lost opportunities to distribute unique products"); *Am. Family Mut. Ins. Co. v. Gustafson*, No. 08-cv-02772-MSK, 2008 WL 5377969, at *2 (D. Colo. Dec. 22, 2008) (noting that "the loss of customers (and the associated goodwill) to an unfair competitor can constitute irreparable harm").

Because all four factors weigh in favor of injunctive relief, the Court will grant a temporary restraining order in favor of plaintiff and against Mr. Condon.

Pursuant to Fed. R. Civ. P. 65(c), the Court required that plaintiff post a $1,000.00 bond by April 17, 2019.

For the foregoing reasons and those stated in the Court's oral ruling, it is

**ORDERED**, pursuant to Fed. R. Civ. P. 65, that the portion of Plaintiff BOKF, N.A.'s Rule 65 Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 5] seeking a temporary restraining order is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that Mr. Condon is temporarily enjoined and restrained from using, disclosing, disseminating, or copying any client or referral source contact information that he acquired, or that may exist on his personal telephone, as a result of his

employment with plaintiff. It is further

ORDERED that, within a reasonable time before the preliminary injunction hearing, Mr. Condon shall allow a forensic accountant retained at plaintiff's expense to make a mirror image of relevant date ranges of Mr. Condon's Hotmail email account. It is further

ORDERED that Mr. Condon shall return to plaintiff any business cards or copies of business cards obtained as a result of his employment with plaintiff, including business cards of plaintiff's customers and referral sources. It is further

ORDERED that this order will expire on May 1, 2019 unless extended by the Court, upon motion by plaintiff, for good cause.

Entered April 17, 2019 at 12:00 p.m.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge